IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NICHOLE M.,[1]                                        Case No. 2:22-cv-00645-MK

    Plaintiff,                              OPINION AND ORDER

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

_____


KASUBHAI, United States Magistrate Judge:

   Plaintiff Nichole M. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her applications for supplemental

security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act

(the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §

405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 7. For the reasons below, the Commissioner's final decision is REVERSED and REMANDED for an immediate calculation of benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI and DIB in March 2019, alleging a disability onset date of January 1, 2019. Tr. 16. Her applications were denied initially and upon reconsideration. Tr. 75-87, 88-100, 101-116, 117-132. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in May, 2021. Tr. 145. On June 22, 2021, the ALJ issued a decision finding Plaintiff not disabled. Tr. 13–28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 35 years old on her amended alleged onset date. Tr. 27. Plaintiff completed high school and has past relevant work experience as caregiver, food sales clerk, customer service clerk, and cashier. Tr. 26. Plaintiff alleged disability based on bipolar disorder, posttraumatic stress disorder (PTSD), anxiety, irritable bowel syndrome (IBS), gastroesophageal reflux disease (GERD), and bilateral carpal tunnel and cubital tunnel syndrome. Pl.'s Br. at 2, ECF No. 14.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of no less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that

PAGE 3 – OPINION AND ORDER

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumed disabled; if not, the

analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to

determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related

activities that the claimant may still perform on a regular and continuing basis, despite any

limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e),

416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can

perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If

the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden

shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must

establish that the claimant can perform other work that exists in significant numbers in the

national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner

meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966

## THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful

employment since January 1, 2019, the alleged onset date. Tr. 18.

At step two, the ALJ determined that plaintiff has the following severe impairments:

"Alcohol/cannabis abuse; Bipolar II disorder; Posttraumatic stress disorder (PTSD); Bilateral

carpal tunnel and cubital tunnel syndrome status-post surgery; Irritable bowel syndrome (IBS);

Gastroesophageal reflux disease (GERD)." Tr. 18-19.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically

equal the severity of a listed impairment. Tr. 19. The ALJ then resolved that plaintiff had the

residual function capacity ("RFC") to perform less than the full range of light work, with the following limitations:

> She can lift up to 20 pounds occasionally and lift or carry up to 10 pounds frequently, stand and/or walk about six hours in an eight-hour workday and sit for about six hours in an eight-hour. She cannot climb ladders, ropes or scaffolds. She is limited to frequent handling and fingering bilaterally. No unprotected heights. No production pace conveyer-belt type work. She needs a predictable work environment with no more than occasional simple workplace changes and brief and superficial interaction with the public and co-workers and occasional interaction with supervisors.

Tr. 20-21.

At step four, the ALJ found that plaintiff could not perform any past relevant work. Tr. 26.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a housekeeper, routing clerk, and collator operator. Tr. 27. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 27.

## DISCUSSION

Plaintiff alleges five errors: (1) the ALJ improperly discounted plaintiff's subjective symptom testimony; (2) the ALJ unreasonably found the opinions of nurse practitioner Michelle McIntyre, FNP, and counselor Terry Gray, MA unpersuasive; (3) the ALJ erroneously found plaintiff's impairments did not meet or equal a listing at step three; (4) the ALJ improperly rejected lay witness testimony; and (5), the ALJ inappropriately relied upon vocational testimony to find that Plaintiff could adjust to work existing in significant numbers in the national economy.

For the reasons discussed below, the Commissioner's decision denying Plaintiff's claim is reversed and remanded for further proceedings.

## I.    Subjective Symptom Testimony

Plaintiff argues the ALJ rejected her symptom testimony for reasons that were neither specific, clear nor convincing. Pl.'s Br. 16–19, ECF No. 14. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; instead, the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity,

PAGE 6 – OPINION AND ORDER

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ rejected Plaintiff's subjective symptom testimony about her physical and mental health on the grounds that, while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. The ALJ specifically cited inconsistencies between Plaintiff's testimony and both her medical history and activities of daily living. Tr. 21-24. Because neither is a clear and convincing reason to discount plaintiff's testimony concerning her physical or mental health symptoms, the ALJ erred.

### A. Conflict with objective medical evidence

Plaintiff challenges the ALJ's decision to discount her testimony concerning gastrointestinal symptoms related to her IBS and mental health symptoms. The Commissioner counters that the ALJ properly discounted Plaintiff's symptom testimony because it conflicted with the objective medical evidence in the record. ECF No. 17 at 9. While an ALJ may reject symptom testimony that is unsupported by persuasive reports of treatment providers, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004), an ALJ may not cherry-pick isolated instances of improved functioning. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ must consider Plaintiff's subjective testimony in light of the record as a whole. *Id.* Furthermore, the Ninth Circuit has held that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a

PAGE 7 – OPINION AND ORDER

basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ cited sporadic improvement in plaintiff's mental health symptoms, and supposed improvement in plaintiff's gastrointestinal health to support his decision to discount plaintiff's symptom testimony. For plaintiff's mental health symptoms, the ALJ noted that her mental functioning was relatively stable with treatment, that in March 2020, she was ready to start looking for part-time employment, and was no longer taking abilify and amitriptyline. Tr. 23, 748. In July 2020, Plaintiff also reported her relationships and moods were positive of late, noting she had plans for the Fourth of July Tr. 23, 724. In August 2020, Plaintiff reported "calm functioning" at home and minimal emotional effects after breaking off her relationship with her boyfriend. She reported having gone to the Umatilla River for a barbeque with friends. Tr. 23, 712. In September 2020, the claimant was socializing with neighbors and relations with her children were going well. Her mood had been stable and upbeat. Tr. 23, 707. She struggled with loneliness at times but stated she had been able to find activities each day to keep herself busy, and, significantly, reported that her excessive anxiety and fears had abated. Tr. 23, 701. In terms of plaintiff's gastrointestinal symptoms, the ALJ noted that Plaintiff's GI health seemed to be correlated with her quitting the prescribed medication amitriptyline, a decision he did not explain. Tr. 24. The ALJ did not cite to any other record evidence supporting his theory that Plaintiff's GI health had improved. Tr. 24.

When viewed in the context of the record as whole, scattered evidence of short-lived improvements were not clear and convincing reasons for the wholesale rejection of Plaintiff's subjective symptom testimony regarding her mental health. The ALJ must consider Plaintiff's subjective testimony in light of the record as a whole; an ALJ may not cherry-pick isolated

instances from the record. *Ghanim*, 763 F.3d at 1164; *Garrison*, 759 F.3d at 1017. First, the ALJ

cites several medical records from 2018, which predate the alleged onset date, and do not

meaningfully undermine plaintiff's testimony about her symptoms on May 18, 2021, the day of

the hearing. *See* Tr. 22-23. Plaintiff's mental health symptoms also worsened as much as they

improved, and the ALJ erred by citing only Plaintiff's periods of improvement. On the other side

of the ledger from the treatment notes the ALJ cites are just as many notes supporting Plaintiff's

symptom reports. For example, On January 22, 2020, Plaintiff presented with a lot of anxiety,

flashbacks of abuse, panic attacks, restlessness, sleep difficulties resulting from nightmares of

her ex-boyfriend strangling her, sad/depressed mood, body tension, and excessive worrying. Tr.

624. On March 5, 2020, Plaintiff reported that she still had "too much anxiety and irritability."

Tr. 751. On June 18, 2020, Mr. Gray noted that Plaintiff exhibited a worried/anxious affect. Tr.

726. On March 8, 2021, the claimant presented with rapid speech and acknowledged that she was

in a somewhat manic phase of her emotional cycle. Tr. 682  In sum, when viewed in the context

of the record as whole, the ALJ improperly isolated cycles of improvement as a reason to reject

Plaintiff's subjective symptom testimony about her mental health. Thus, the ALJ did not provide

clear and convincing reasons for rejecting this part of Plaintiff's testimony.

       Likewise for the ALJ's decision to discount Plaintiff's testimony concerning her GI

symptoms. At the hearing on May 18, 2021, Plaintiff described how flares of her IBS prevented

her from working and kept her home four to five days a month. Tr. 44-45. The ALJ cited that

plaintiff began a medication for IBS, and that there was "no evidence" of visits to a specialist or

GI complaints in the record to discount the testimony about these symptoms. Tr. 24. To the

extent the basis for the ALJ's decision is a "lack of medical evidence" supporting plaintiff's

allegations of disabling IBS symptoms, absence of medical evidence "may not be the sole basis

for rejecting a claimant's subjective symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). Nor does the ALJ point to direct evidence of improvement with treatment, or other conflicts in the medical record. *See* Tr. 24. Without more, the ALJ failed to provide a clear and convincing reason to discount plaintiff's testimony about her disabling IBS symptoms either.

   **B.  Activities of daily living**

   The Commissioner further contends the ALJ properly rejected Plaintiff's symptom testimony because it conflicted with her activities of daily living. Def. Br. 5–6. Activities of daily living can form the basis for an ALJ to reject a claimant's testimony in two ways: (1) where the activities "contradict [a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her credibility).

   The ALJ cited Plaintiff's ability to take her kids to and from school, shop in stores, socialize with neighbors, take a trip to the Umatilla River, and keep herself busy in general. Tr. 24-26. The Ninth Circuit, however, has consistently held that such a modest level of activity is not sufficient to reject a claimant's subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("[T]he mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping,

PAGE 10 – OPINION AND ORDER

driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.").

Crucially, the ALJ also failed to articulate how Plaintiff's limited activities in any way conflicted with her testimony. This was error. *See Smolen*, 80 F.3d at 1284 (explaining that to properly discredit a claimant on the basis that her activities contradict her testimony, the "ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion"). For example, the ALJ cited one instance of the plaintiff going to a barbecue, sporadic socializing with neighbors, and that plaintiff could take her children "to and from" school, Tr. 24-26 (citing Tr. 347, 351, 707). But the ALJ does not directly connect these activities to the testimony it supposedly undermines, nor do these activities undercut Plaintiff's testimony about her physical or mental impairments. Regarding Plaintiff's physical symptoms, these activities do not undermine plaintiff's testimony about, for example, her debilitating IBS, Tr. 44-45. Nor do these activities conflict with plaintiff's testimony about her PTSD, resulting in four to five days per month where she spaces out, has difficulty communicating, lacks the ability to care for her children or dog, is unable to attend appointments, and cannot focus. Tr. 46-48. Thus, the ALJ erred by overstating the claimant's daily activities and failing to explain how her activities were inconsistent with her disabling allegations. *Garrison*, 759 F.3d at 1016.

Because the ALJ failed to identify what testimony is not credible and why, or to provide clear and convincing reasons for discrediting the disabling testimony of Plaintiff, the ALJ's decision to discount subjective symptom testimony was error.

## II.    Medical Evidence

Plaintiff contends the ALJ improperly assessed Nurse Practitioner Michelle McIntyre, and Mental Healthcare Provider, Terry Gray's medical opinions. Pl. Br. 8-14. For disability

claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence

applies. Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to

Rules"), 2017 WL 168818, 82 Fed. Reg. 5844, at *5867-68 (Jan. 18, 2017).

Under the new regulations, the Commissioner is no longer required to supply "specific

evidentiary weight to medical opinions; this includes giving controlling weight to any medical

opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or.

Nov. 5, 2020) (citing Revisions to Rules, 2017 WL 168819, at *5867–68). Instead, ALJs must

consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20

C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the

opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered

the supportability and consistency factors for a medical source's medical opinions ... in [their]

decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the

"more relevant the objective medical evidence and supporting explanations presented by a

medical source are to support [their] medical opinion[ ], the more persuasive the medical

opinions ... will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more

consistent a medical opinion[ ] is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the providers

relationship with the claimant; however, they are not required to do so. 20 C.F.R. §§

404.1520c(b)(3), 416.1520c(b)(3). The new regulations do not displace the Ninth Circuit's entire

body of caselaw relating to medical evidence, which remain binding on this Court. For example,

it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion.

*Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)

PAGE 12 – OPINION AND ORDER

(reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for this Court to engage in meaningful appellate review. *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

### A.  Michelle McIntyre, FNP

Nurse Practitioner Michelle McIntyre, FNP, the claimant's treating provider since February 9, 2018, provided a medical source statement indicating the following opinions: (1) Plaintiff has had abdominal and gastrointestinal issues for over two years, with diagnoses of gastroesophageal reflux disease (GERD) and irritable bowel syndrome (IBS) with mixed constipation and diarrhea; (2) her cramping and diarrhea are improved with amitriptyline, but still occur four to five days per month, resulting in the inability to leave the house because she cannot be away from the toilet on such days; (3) when constipation is present, it takes her about 60 minutes to have a bowel movement in the morning; and (4) she has a history of intimate partner violence and has significant anxiety and PTSD. Tr. 879-880.

The ALJ rejected FNP McIntyre's opinion, stating the following:

These statements are based on claimant's self-reports to her provider [], and the frequency and severity of her complaints are not consistent the longitudinal record. Upon physical examination, the claimant was described as well-nourished and in no acute distress, and there no gastrointestinal abnormalities other than constipation reported upon review of general systems throughout counseling sessions. Tr. 26.

As discussed above, the ALJ erred by relying on isolated instances of improvement in Plaintiff's treatment history to discount Plaintiff's subjective symptom testimony, and by extension, NP McIntryre's opinion. In particular, the ALJ noted "no evidence of specialized treatment with a gastroenterologist," and "no evidence of further [] (GI) complaints…after [plaintiff's] amitriptyline dosage was increased" as undermining NP McIntyre's opinion that claimant cannot leave the house due to IBS symptoms 4-5 days a month. Tr. 24. The ALJ lacked clear and convincing evidence to disregard Plaintiff' symptom testimony, so likewise had no basis to reject NP McIntyre's opinion because they were "based on [Plaintiff]'s self-reports." With respect to the ALJ's conclusion that NP McIntyre's opinion is inconsistent with Plaintiff's reports of being well-nourished, without GI issues "throughout counseling sessions," this conclusion is also not supported by clear and convincing evidence. The ALJ failed to cite which "counseling sessions" reflected this period of health, and selectively neglected both plaintiff's testimony and NP McIntyre's opinion that Plaintiff's IBS symptoms were indeed disabling. The ALJ also failed to articulate how Plaintiff's treatment history in any way conflicts with Plaintiff's testimony or NP McIntyre's opinion. Therefore, the ALJ committed harmful error by discounting NP McIntyre's opinion.

### B.  Terry Gray, MA, QMHP

On April 21, 2021, Plaintiff's treating mental healthcare provider, Terry Gray, MA, QMHP, provided a medical source statement indicating marked limitations in the following basic work abilities: (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) accept instructions and respond appropriately to criticism from supervisors; and (8) travel in unfamiliar places or use public transportation. Tr. 875-76. Mr. Gray also found the following: (1) marked limitations in the "B" criteria of understand, remember, or apply information, adapt or manage oneself, and concentrate, persist, or maintain pace; (2) affirmation of the "C" criteria, as even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate; (3) Plaintiff would likely be off task and unproductive 21-30% of a 40-hour per week schedule; (4) she would likely miss 4 or more days of work per month; (5) there is at least one MD or PhD on her treatment team; and (6) the noted limitations do not include limitations from current alcohol or drug use. Tr. 877-78.

      The ALJ rejected the disabling opinion of Mr. Gray, stating the following:

> This opinion is not persuasive because the checkbox form has no explanation for the limitations given, it is inconsistent with the longitudinal medical record, and is notably inconsistent with this provider's own treatment records primarily dealing with relationship issues and substance use. This opinion is also inconsistent with the unremarkable mental status examination findings and the claimant's contemporaneous reports of symptom improvement. (Tr. 26).

      The ALJ incorrectly relied on these three bases to reject Gray's medical opinion. First, when deciding that Gray's checkbox form opinion was not supportable for lack of explanation, the ALJ failed to analyze the entire record, where there is ample support for the opinions expressed in the checkbox form. *See Garrison*, 759 F.3d at 1013 (noting that even check-box forms that do not stand alone, but are supported by other findings, shall be "entitled to weight that an otherwise unsupported and unexplained check-form would not merit."). Here, the ALJ failed to evaluate Mr. Gray's underlying treatment records, which fully support the opinion that

PAGE 15 – OPINION AND ORDER

plaintiff would be unproductive or absent for a large portion of a full-time work schedule, and

that she had several limitations to her ability to work. Tr. 877-78. For example, on May 20, 2019,

Gray noted plaintiff was experiencing with crippling anxiety. Tr. 636. On October 29, 2019, she

presented to Mr. Gray with continued PTSD issues and anxious affect. Tr. 630. On January 22,

2020, she presented with a lot of anxiety, flashbacks of abuse, panic attacks, restlessness, sleep

difficulties resulting from nightmares of her ex-boyfriend strangling her, sad/depressed mood,

body tension, and excessive worrying. Tr. 624. On March 5, 2020, Plaintiff reported that she still

had "too much anxiety and irritability." Tr. 751. On June 18, 2020, Mr. Gray noted that she

exhibited a worried/anxious affect. Tr. 726. On March 8, 2021, the claimant presented with rapid

speech and acknowledged that she was in a somewhat manic phase of her emotional cycle. Tr.

682. In all, the record contained significant evidence supporting Gray's medical opinions, which

the ALJ did not address.

The ALJ also failed to support his decision to discount Gray's medical opinion as

inconsistent with plaintiff's record of improvement and medical treatment. The ALJ provided no

nexus between his boilerplate findings and the rejection of Mr. Gray's specific functional

assessment. According to Gray, Plaintiff is primarily limited by her inability to function four to

five days per month following nighttime sleep disturbances associated with PTSD, in addition to

anxiety attacks and bipolar episodes. The ALJ did not address this directly, and erred by

rejecting Mr. Gray's disabling treating opinion based on the claimant's waxing and waning

mental health symptoms. *See Garrison*, 759 F.3d at 1017-18 (citing *Holohan v. Massanari*, 246

F.3d 1195, 1205 (9th Cir. 2001)); *see also Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016)

("It is the nature of bipolar disorder that symptoms wax and wane over time.") Indeed, the ALJ

did not point to any specific symptom improvement; and the record reflects that plaintiff

PAGE 16 – OPINION AND ORDER

continues to suffer regular nightmares associated with her PTSD, resulting in four to five days per month where she spaces out, has difficulty communicating, lacks the ability to care for her children or dog, is unable to attend appointments, and cannot focus. Tr. 46-48. As indicated above, the ALJ's decision to discount these subjective symptoms was error, and that error compounded when the ALJ failed to incorporate plaintiff's symptom reports into his supportability and consistency analysis of the medical opinions. For these reasons, it was error for the ALJ to discount Gray's medical opinions as well.

## III.    Lay Witness Testimony

Plaintiff next argues that the ALJ erred by discounting lay witness testimony for the same erroneous reasons cited for discounting plaintiff's own symptom testimony. Pl. Br. at 16. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id.* (citation and internal quotation omitted). The ALJ noted the lay witness testimony was "similar to the claimant's own subjective complaints of disabling social limitations," which the ALJ found inconsistent with "activities of daily living including her admitted ability to take her kids to and from school, shop in stores, socialize with neighbors, and keep herself busy in general." Tr. 26. As discussed above, the ALJ failed to supply legally sufficient reasons for rejecting plaintiff's subjective complaints. The ALJ therefore erred by rejecting the lay witness statement for these same reasons.

## IV.    Whether Plaintiff's Symptoms Met or Equaled a Listing

At step three, an ALJ must evaluate the relevant evidence to assess whether a claimant's impairments meet or equal a listed impairment. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.

PAGE 17 – OPINION AND ORDER

2001). A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). An ALJ, however, is only required to discuss and evaluate the evidence that supports his or her conclusion. *Lewis*, 236 F.3d at 513. Further, a claimant bears the burden of proving that her impairments meet or equal a listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

Plaintiff asserts the ALJ erred in not finding her presumptively disabled at step three by failing to fully evaluate the paragraph C criteria. Pl. Br. at 14-15 (citing Tr. 20). She argues that the ALJ failed to address the claimant's treatment notes, testimony, and examination findings tending to support disability. In particular, Plaintiff has a minimal capacity to adapt when she experiences nightmares of her ex-boyfriend strangling her, which frequently results in the complete inability to function the following day. Tr. 46-48. As discussed above, Mr. Gray's treating opinion—showing marked limitations in multiple "paragraph B" criteria and affirmation of the "paragraph C" criteria—was improperly rejected, and the record evidence establishes ongoing marked impairment. In short, the ALJ's findings constitute clear legal error, as he must not "selectively focus[]" on aspects of the medical record "which tend to suggest non-disability," *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001), nor support findings with an "inaccurate characterization of the evidence" or fail to incorporate a relevant medical opinion, like Mr. Gray's. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). The ALJ's failure to make any findings relating to whether plaintiff's PTSD, bipolar disorder, and anxiety met Listings 12.04, 12.06, and 12.15, at step three was therefore error, the ALJ's step three finding is reversed, and this case must be remanded on that basis as well.

PAGE 18 – OPINION AND ORDER

## V.    Vocational Expert Testimony

Plaintiff contends that the vocational hypotheticals posed by the ALJ were incomplete because the hypotheticals do not incorporate the functional limitations alleged by Plaintiff and opined by his treating doctors, which the ALJ improperly rejected. Pl.'s Br. at 19. "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant[.]" *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "[When] the hypothetical posed by the ALJ to the vocational expert did not reflect all of [the claimant]'s limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision." *Id.* at 423.

The two hypotheticals posed to the VE by the ALJ both envisioned a claimant with the following characteristics: Plaintiff's age, education, and past work experience; can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit for six hours in an eight-hour day; can never climb ladders, ropes or scaffolds and must avoid concentrated exposure to extreme cold. Tr. 55-56, 59. The first hypothetical also envisioned that the claimant can stand and walk for six hours in an eight-hour day while the second hypothetical envisioned a claimant who can stand and walk for four hours in an eight-hour day. Tr. 56, 59. These hypotheticals do not incorporate functional limitations assessed by Plaintiff and her doctors. For example that Plaintiff would be absent more than one day per month, or off task 21-30% of the time. Tr. 68, 72. When presented with more complete hypotheticals containing these improperly rejected limitations the VE testified that each limitation would independently preclude Plaintiff from maintaining competitive employment. Tr. 68, 72. Because the ALJ's hypotheticals did not take account of Plaintiff's functional limitations that were improperly rejected, the Vocational Expert's opinion

based on the ALJ's hypotheticals has no evidentiary value and cannot support the ALJ's

decision. *Embrey*, 849 F2d at 423.

## VI.    Remedy

A reviewing court has discretion to remand an action for further proceedings or for a

finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th

Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings

depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179

(9th Cir. 2000).

In determining whether an award of benefits is warranted, the court conducts the "three-

part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers

whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2)

the record has been fully developed and further proceedings would serve no useful purpose; and

(3) if the improperly discredited evidence were credited as true, the ALJ would be required to

find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir.

2015). Even if all the requisites are met, however, the court may still remand for further

proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in

fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are

"inconsistencies between the claimant's testimony and the medical evidence," or if the

Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that

evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808

F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

PAGE 20 – OPINION AND ORDER

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for, *inter alia*, discrediting Plaintiff's subjective symptom testimony and for discrediting the medical opinions.

As to the second requisite, Plaintiff has already undergone one consultative examination and the Court finds remanding to further develop the record in that regard would serve little useful purpose. The Court notes that the ALJ found both Plaintiff's treating providers' opinions unpersuasive. *See Garrison*, 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted).

As to the third requisite, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Mr. Gray and NP McIntyre agreed that Plaintiff would be unable to attend work due to her symptoms, and identified marked limitations in Plaintiff's ability to function. The Vocational Expert testified that if a person spent more than one day away from work per month, or was off task 21-30% of the time, that person would not be able to engage in competitive employment. Tr. 68, 72. Thus, in fully crediting the medical opinions as true, the ALJ would be required to find Plaintiff disabled on remand. *See Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had marked limitations in her ability to ... maintain regular attendance, and be punctual within customary tolerances" combined with VE testimony that "individuals who miss two or more days on a chronic basis are not competitively employable" warranted remanding for an immediate calculation and award of benefits), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010).

PAGE 21 – OPINION AND ORDER

Lastly, considering the record as a whole, the Court has no basis to doubt that Plaintiff is disabled under the Act. As such, the Court concludes the proper remedy in this case is to remand for a calculation of benefits. *See Garrison*, 759 F.3d at 1022–23.

## CONCLUSION

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this <u>11th</u> day of April 2023.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge

PAGE 22 – OPINION AND ORDER